### GIBSON et al. v. UNITED STATES.

### RONK v. UNITED STATES.

### WHITE v. UNITED STATES.
#### Civ. A. Nos. 473–475.

United States District Court
S. D. West Virginia Huntington Division.
April 26, 1949.

V. K. Knapp and G. R. Penick, Jr., Charleston, W. Va., for plaintiffs Herbert D. Gibson and Beulah Gibson.

A. A. Lilly and R. G. Lilly, Charleston, W. Va., for plaintiff Joe C. Ronk.

T. Dale Wilson, Huntington, W. Va., for plaintiff Lawrence C. White.

Leslie E. Given, United States Attorney, Charleston, W. Va., Philip A. Baer and Milton J. Ferguson, Assistant United States Attorneys, Huntington, W. Va., for defendant.

WATKINS, District Judge.

Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., I make the following findings of fact and conclusions of law:

### Findings of Fact.

1. On January 12, 1948, Herbert D. Gibson was driving a 1935 Ford Sedan in an easterly direction on U. S. Route 60, about one mile west of Barboursville, W. Va. Sergeant Richard H. Hite, a member of the United States Army, who was then attached to the Huntington Recruiting Sub-Station, Huntington, W. Va., was approaching the Ford Sedan from the east. Hite was driving a 1942 Ford Sedan, owned by the United States, and was then and there acting within the scope of his employment, and upon official business for the United States Army. As Hite approached the Gibson car, he recklessly and negligently drove over onto the left or wrong side of the road, across the center line of such highway into the oncoming Ford Sedan driven by Gibson. Just before hitting the Gibson car, Hite recklessly and negligently, and at a high and unlawful rate of speed, attempted to overtake and pass a taxicab driven by Joe C. Ronk, also traveling in a westerly direction. When the Army and Gibson cars collided head-on, the Army car (owned by defendant) was thrown against the taxicab driven by Ronk. Lawrence C. White was a passenger in the taxicab.

2. Gibson saw the Army car coming and turned his car to the right in an effort to avoid a head-on collision. Neither Herbert D. Gibson, Beulah Gibson, Joe C. Ronk nor White was guilty of contributory negli-

gence. The accident occurred about three o'clock in the afternoon when it was raining and the road was wet. Both the Gibson car and the taxicab were proceeding in a lawful manner at a moderate rate of speed. The negligence of Richard H. Hite was the sole and proximate cause of the accident and the following injuries to the following persons:

### Beulah Gibson.

1. Beulah Gibson, age 47, was riding in the rear seat of the Ford Sedan automobile driven by her son, Herbert D. Gibson. She suffered a severe blow on the head, resulting in a mild concussion, and a hemotonia on the left forehead about the size of a walnut, rendering her unconscious.

2. She suffered a Colles fracture of the wrist which had to be put in a cast for about six weeks. Her wrist is still weak. The only possibility of permanent injury is the possible onset of post-traumatic arthritis to the wrist joint. There is no evidence of such arthritis at this time.

3. She also suffered a hemotonia of the left shoulder and right ankle joint, with no bone injury. She was admitted to the hospital on January 12, and discharged February 7. The left shoulder became frozen because of immobilization (commonly called bursitis with adhesions), making it necessary for her to re-enter the hospital on May 3, where she was put under anesthesia and the shoulder manipulated to remove the adhesions. She was again released from the hospital on May 8.

4. Because of such injuries she was unable to do her housework for about seven months. After returning from the hospital she was in bed at home for about three months, and for about two months longer was in bed about half the time. Except as mentioned above, her recovery is now complete. She incurred necessary hospital and medical expenses of $382.65.

■ The sum of $5,000 is just and fair compensation for all damages resulting to Beulah Gibson from such accident.

### Herbert D. Gibson.

1. Herbert D. Gibson was driving the 1935 Ford Sedan automobile. His right knee struck the steering wheel, causing a laceration in his knee about three centimeters in length, with some tear of external cartilage. He was unable to work because of such injuries from January 12 to February 9. His necessary medical expenses were $32.50. His knee is now normal, but from past history of such injuries he may at some future time be troubled with it. It is similar to what is known as athlete's knee.

■ 2. The sum of $600 is just and fair compensation for all damages resulting to Herbert D. Gibson from such accident.

### Joe C. Ronk.

1. When the Ronk car was struck by the Army car, Ronk was twisted, turned and scooted out of his seat. He was 39 years of age and his health was previously good. He had experienced no trouble with his back prior to this accident. He was a first-class mechanic and had a repair garage of his own, but also managed a taxicab company for his mother. His average monthly earnings for the year 1947 were $350–$400. After the accident he drove to State Police Headquarters, a distance of about one mile from the scene of the accident, then returned to the scene of the accident and stayed there for some time. That night he did not sleep well because of pains in his back. The next morning he went to see Dr. Richmond, at Milton, W. Va., who gave him a few pain pills and some liniment. Later he went to see Dr. Neese, a chiropractor, who gave him several treatments for his back. Later he went to Dr. Silver, at Milton, who recommended that he go to see Dr. Jones, an Orthopedic surgeon. He was first examined by Dr. Jones on January 22. This examination included a thorough clinical and physical examination and the taking of X-ray pictures. Dr. Jones found quite a bit of muscle spasm in the lower back and his diagnosis was that Ronk had a fracture of the fourth lumbar vertebra on the left with very slight displacement. Upon his recommendation, Ronk entered the hospital on January 25 where he remained for 74 days. A plaster cast was placed on him from his hips up to his arms. The cast was removed March 16. After

the cast was removed Dr. Jones had him wear a Taylor back brace. He later returned to the hospital for physiotherapy treatments. All of this hospitalization and treatment was directed by Dr. Scott, an able and reputable orthopedic surgeon, for what he believed to be a fracture of the fourth lumbar vertebra.

2. Shortly before trial many additional X-rays were taken by other physicians, who found no evidence of any such fracture in either the X-rays taken by Dr. Jones or the new X-rays taken by them. Dr. Francis Scott, an orthopedic surgeon, and Dr. Cole D. Genge, an X-ray specialist, were unable to find any such fracture. The court appointed Dr. Henry Edstrom, a disinterested X-ray specialist, to examine all the X-rays, and he, too, was unable to find any such fracture. From this evidence I find that no fracture or dislocation in any part of the spine or pelvis occurred. However, I do find from the evidence that he suffered serious damage to the soft tissues, including muscles and ligaments in the area of the lower back. Such damage or injury would not be shown by any of the X-rays.

3. After taking X-rays and making a thorough physical and clinical examination, Dr. Jones recommended certain treatment which he reasonably believed to be necessary. Ronk, as a reasonable person, accepted the diagnosis and opinion of Dr. Jones, an expert in this field, as to the nature and cause of his injuries. As a result of this he incurred hospital and doctor bills in the amount of $1,168.50 in an effort to be cured of his injuries, and lost several months of time from his work. I find that Ronk did sustain severe injury to his back and that the treatment given him by Dr. Jones was reasonably necessary to cure such injuries. As a result of this thorough treatment, I find that he has now recovered, and that there is no permanent injury. He is not now suffering from Marie-Strumpell type of arthritis. Since his discharge from the hospital he has exaggerated his pain and injuries.

4. The sum of $4,000 is reasonable compensation for all injuries and damages suffered by Joe C. Ronk as the result of such accident.

## Lawrence C. White.

1. Prior to this accident Lawrence C. White had suffered a severe injury to his right leg which resulted in a guillotine amputation just below the knee on May 5, 1947. On June 16, 1947, a re-amputation became necessary because the skin area was not loose enough to do a closure over the raw area. He was discharged from the hospital on July 29 with the stump healed. He was fitted for an artificial limb on November 4, 1947, and was learning to use it well when the accident occurred. At first the artificial limb irritated the stump but after a while this condition improved. White was riding in the front seat of the taxicab. The jolt caused by the collision with the Army car threw him forward and off the seat and twisted him in such a manner as to cause the stump of his right leg to snap out of the bucket of the artificial limb and strike either the instrument panel or his cane (which was ⅞ of an inch thick) and which was broken by the impact. There was also some slight strain to his back and neck. After the accident he remained in the cab and was taken to the home of his sister where he immediately called Dr. Hardwick who came out to see him. Dr. Hardwick stated that this type of injury was out of his line and advised him to go to a hospital. White requested the doctor to get him admitted to the Huntington Memorial Hospital, but the doctor was unable to do so. White then tried to get admitted to the Rowley Clinic but again failed. The night of the accident, the pain was so intense that he got a friend out of bed to summon a doctor. The friend went to Hurricane, W. Va., and failing to locate a doctor, returned to the residence of Dr. Hanley at Culloden, W. Va., and had Dr. Hanley call Dr. Pulitano at Milton, W. Va., who stated that he could not do anything for him and advised that White be sent to a hospital. On the next day White attempted to get an insurance company representative to attempt to get him into a hospital. On January 15 it was necessary to carry him one block in a car to attend a funeral of a relative. On January 16 a practical nurse rubbed his bruised and red stump to relieve the pain. On January 19 White

994

arranged to enter the Morris Memorial Hospital at Milton, W. Va., where Dr. Kehoe examined his stump and found it essentially normal. The next morning White left the hospital, and on January 22, he was admitted to the Huntington Orthopedic Hospital.

2. With the benefit of clinical study and X-ray at this hospital Dr. Jones found a bruised area on the stump of the right leg below the knee, and that the peroneal nerve that winds around the bone close to the outside skin and just at the head of the fibula, and the head of the fibula, were bruised and very painful, and that the muscles of the stump had contracted so that the stump of his leg could not be straightened out. I find this diagnosis truly reflects his injuries and that such condition and injuries were the result of the accident on January 12. Further operation on the leg was necessary. It became necessary to excise the bruised head of the fibula bone and to cut the damaged peroneal nerve off and put it back into the muscle. The injury to the fibula and the large superficial nerve over the head of the fibula, which made this operation necessary, was not caused by irritation but by the injury on January 12.

3. As a result of his injuries, it became necessary for him to incur hospital expense (77 days) in the sum of $911.73 and doctor bills of $355. The sum of $2,200 is reasonable and just compensation for injuries and damages incurred by Lawrence C. White as the result of such accident.

Conclusions of Law.

1. This court has jurisdiction of these actions by virtue of the "Federal Tort Claims Act", 28 U.S.C.A. § 921 et seq. [now §§ 1346, 2671 et seq.].

2. The plaintiffs in these actions are entitled to recover from the United States of America as damages the following amounts:

Beulah Gibson $5,000; Herbert D. Gibson $600; Joe C. Ronk $4,000; and Lawrence C. White $2,200.